**CHOCTAW NATION OF OKLAHOMA and Chickasaw Nation, Plaintiffs,**

v.

**STATE of Oklahoma, Defendant.**

**No. Civ–10–50–W.**

United States District Court, W.D. Oklahoma.

June 22, 2010.

---

chael Burrage, Whitten Burrage, Oklahoma City, OK, for Plaintiffs.

Sarah Brune Edwards, Stephen L. Cortes, Oklahoma Governor's Office, Oklahoma City, OK, for Defendant.

## ORDER

LEE R. WEST, District Judge.

This matter comes before the Court on the Motion for Summary Judgment, as amended, filed pursuant to Rule 56, F.R.Civ.P., by plaintiffs Choctaw Nation of Oklahoma and Chickasaw Nation (collectively "Nations"). Defendant State of Oklahoma ("State") has responded.

Summary judgment as requested by the Nations "should be rendered if ... [the record] show[s] that there is no genuine issue as to any material fact and that the movant[s] ... [are] entitled to judgment as a matter of law." Rule 56(c)(2), F.R.Civ.P. An issue of fact is genuine if the issue could be decided in favor of either party, e.g., *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), and a fact is material if it might reasonably affect the outcome of the case. *E.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The Nations commenced this action against the State, seeking certification and enforcement of an Arbitration Award dated August 25, 2009. *In the Matter of the Joint Referral to Binding Arbitration by the Choctaw Nation of Oklahoma, the Chickasaw Nation, and the State of Oklahoma of Disputes Under and/or Arising From the Choctaw Nation of Oklahoma and State of Oklahoma Gaming Compact and the Chickasaw Nation and State of Oklahoma Gaming Compact.* Based upon the record, the Court makes its determination with regard to the Nations' entitlement to the relief it has requested.

Derek B. Ensminger, Hartzog Conger Cason & Neville, Drew Neville, Jr., Mi-

The Indian Gaming Regulatory Act ("Act"), 25 U.S.C. § 2701 et seq., provides that a compact may be negotiated between tribal governments and states to govern the conduct of "Class III gaming" on Indian lands. *E.g., id.* § 2701(d). The Act further provides that "[C]lass III gaming activity on the Indian lands of the Indian tribe shall be fully subject to the terms and conditions of the Tribal–State compact entered into ... by the Indian tribe that is in effect." *Id.* § 2710(d)(2)(C).

Oklahoma State Question 712, adopted November 2, 2004, by a vote of the citizens of the State of Oklahoma, proposed a model gaming compact as an offer to federally-recognized tribes in the State of Oklahoma to engage in "Class III gaming" on tribal lands within these tribes' Indian country under the terms and conditions of the proposed compact. *See* 3A O.S. § 281 (codification of State Question 712, Model Tribal Gaming Compact).

On November 23, 2004, Chickasaw Nation accepted the State's offer and entered into the Chickasaw Nation and State of Oklahoma Gaming Compact ("Compact"), which became effective February 8, 2005. On November 24, 2004, Choctaw Nation of Oklahoma likewise accepted the State's offer and entered into the Choctaw Nation of Oklahoma and State of Oklahoma Gaming Compact ("Compact"), which became effective February 9, 2005. Pursuant to these Compacts, the Nations have conducted and continue to conduct "Class III gaming" on tribal lands within their Indian County in conformity with the terms and conditions of their respective compacts.

Part 12 of the Compacts entered into by the Nations is entitled "Dispute Resolution," and it provides that

> in the event of any dispute ...., including, but not limited to, a dispute over the proper interpretation of the terms and conditions of th[e] Compact, the following procedures may be invoked...."

3A O.S. § 281, Part 12. The procedures outlined in the Compacts require the "party ... seeking an interpretation of th[e] Compact [to] first ... serve written notice on the other party[,]" *id.* Part 12(1), and permit "either party ... [to] refer a dispute arising under th[e] Compact to arbitration ..., subject to enforcement or pursuant to review as provided by paragraph 3 [1] of ... Part [12] by a federal district court." *Id.* Part 12(2).

Part 12(2) of the Nations' Compacts further provides that "[t]he remedies available through arbitration are limited to enforcement of the provisions of th[ese] Compact[s]," *id.*, and that "[t]he parties consent to the jurisdiction of such arbitration forum and court for such limited purposes and no other, and each waives immunity with respect thereto." *id.*

On January 20, 2009, the Oklahoma Supreme Court [2] asserted state court civil-

---

1. Part 12(3) provides:

Notwithstanding any provision of law, either party to the Compact may bring an action against the other in a federal district court for the de novo review of any arbitration award under paragraph 2 of ... Part [12]. The decision of the court shall be subject to appeal. Each of the parties hereto waives immunity and consents to suit therein for such limited purposes, and agrees not to raise the Eleventh Amendment to the United States Constitution or comparable defense to the validity of such waiver.

2. Oklahoma Supreme Court Justice Joseph M. Watt wrote the published opinion, in which Justice James R. Winchester concurred. Vice Chief Justice Steven W. Taylor likewise concurred, but wrote separately. Justice Marian P. Opala joined in Justice Taylor's concurrence.

Justice Tom Colbert concurred specially in a separate written opinion; Justice Yvonne Kauger, joined by Chief Justice James E.

adjudicatory jurisdiction over a compact-based, Indian country tort lawsuit brought by Loyman Cossey against Cherokee Nation Enterprises, L.L.C., formerly known as Cherokee Nation Enterprises, Inc., and Cherokee Nation Enterprises, Inc., for injuries he sustained while a customer at the Cherokee Casino in Roland, Oklahoma. *Cossey v. Cherokee Nation Enterprises, LLC,* 212 P.3d 447 (Okla.2009). In so doing, the court held "that the state court [was] ... a 'court of competent jurisdiction' as that term ... [was] used in the [Tribal Gaming] Compact [Between the Cherokee Nation and the State of Oklahoma] executed [on November 16, 2004]...." *Id.* at 450.

In response thereto, on February 4, 2009, Choctaw Nation of Oklahoma provided a Notice of Dispute to the State in the form prescribed by the Choctaw Nation of Oklahoma and State of Oklahoma Gaming Compact over the proper interpretation of that compact, and such Notice of Dispute triggered the dispute-resolution proceedings outlined in the Choctaw Nation of Oklahoma and State of Oklahoma Gaming Compact.

On that same date, Choctaw Nation of Oklahoma moved to stay two matters then pending in the Oklahoma Supreme Court until completion of the dispute resolution proceedings between Choctaw Nation of Oklahoma and the State, which had been triggered by the Notice of Dispute. In those two cases, *Dye v. Choctaw Casino of Pocola,*[3] and *Griffith v. Choctaw Casino of Pocola,*[4] the plaintiffs had appealed the dismissal of their state court tort actions against Choctaw Nation of Oklahoma.[5] By Order dated March 3, 2009, the Oklahoma Supreme Court denied the Motions to Stay and refused to abate the proceedings.

On March 6, 2009, Chickasaw Nation provided a Notice of Dispute to the State in the form prescribed by the Chickasaw Nation and State of Oklahoma Gaming Compact over the proper interpretation of that compact, and such Notice of Dispute triggered the dispute-resolution proceedings outlined in the Chickasaw Nation and State of Oklahoma Gaming Compact.

On June 11, 2009, the Oklahoma Supreme Court denied the Petition for Rehearing filed by the Cherokee Nation of Oklahoma in *Cossey* and issued its mandate, directing the state district court to proceed on the merits of the tort action.

On June 30, 2009, the Oklahoma Supreme Court issued five opinions[6] in *Grif-*

---

Edmondson, concurred in part and dissented in part, and Justices Rudolph Hargrave and John F. Reif, writing separately, dissented.

**3.** In *Dye v. Choctaw Casino of Pocola,* Danny Dye was struck by a casino shuttle cart driven by a casino employee. He and his wife sued the Choctaw Casino of Pocola, Oklahoma, and Choctaw Nation of Oklahoma in the District Court for LeFlore County, Oklahoma, and claimed that the defendants' negligence had caused their injuries.

**4.** In *Griffith v. Choctaw Casino of Pocola,* the plaintiff stepped into a flowerbed and fell. She sued the Choctaw Casino of Pocola, Oklahoma, and Choctaw Nation of Oklahoma in the District Court for LeFlore County, Oklahoma, and claimed that the defendants' negligence had directly caused her injuries.

**5.** The state district judge in both *Griffith* and *Dye* "concluded that tribal courts and federal courts ha[d] jurisdiction over Indian tribes but state courts [did] ... not and dismissed the action[s]." *Griffith v. Choctaw Casino of Pocola,* 230 P.3d 488, 490 (Okla.2009)(per curiam); *e.g., Dye v. Choctaw Casino of Pocola,* 230 P.3d 507, 509 (Okla.2009)(per curiam).

**6.** Vice Chief Justice Taylor, by separate writing, Justice Opala, by separate writing, and Justices Watt, Winchester and Colbert concurred. Justice Kauger, by separate writing, concurred in part and dissented in part. Justice Hargrave dissented, and Justice Reif, by separate writing in which Chief Justice Edmondson joined, likewise dissented.

*fith v. Choctaw Casino of Pocola,* 230 P.3d 488 (Okla.2009)(per curiam), and three opinions[7] in *Dye v. Choctaw Casino of Pocola,* 230 P.3d 507 (Okla.2009)(per curiam). The state supreme court held in both cases "that Oklahoma district courts are 'courts of competent jurisdiction' as that phrase is used in Oklahoma's statutory model tribal gaming compact and therefore the state courts may exercise jurisdiction over ... tort claims against the Choctaw Nation and its casino in Pocola, Oklahoma." 230 P.3d at 491; *e.g., id.* at 509.

On July 20, 2009, the Nations and the State entered into a *Joint Referral to Binding Arbitration Disputes Under and/or Arising From the Choctaw Nation of Oklahoma and State of Oklahoma Gaming Compact and the Chickasaw Nation and State of Oklahoma Gaming Compact* and agreed to

> submit to binding arbitral interpretation in light of controlling extrinsic law the issue of whether, under the Choctaw Nation of Oklahoma and State of Oklahoma Gaming Compact and the Chickasaw Nation and State of Oklahoma Gaming Compact, jurisdiction over all Compact based tort claim and/or prize claim lawsuits lies exclusively in Choctaw Nation or Chickasaw Nation forums.

On August 25, 2009, the Arbitration Award, sought to be certified and enforced in this matter, was issued. Immediately thereafter, Choctaw Nation of Oklahoma filed a Motion to Honor the Arbitration Award with the Oklahoma Supreme Court in *Dye* and *Griffith.*

On September 2, 2009, the state court directed the plaintiffs in *Dye* and *Griffith* to respond not only to the Petitions for Rehearing filed by the Choctaw Nation of Oklahoma on July 20, 2009, but also to the Motions to Honor the Arbitration Award filed by the Choctaw Nation of Oklahoma. On April 12, 2010, the Oklahoma Supreme Court denied both the Petitions for Rehearing and the Motions to Honor the Arbitration Award.[8]

The Nations have argued before this Court that they are entitled to summary judgment pursuant to Part 12 of the parties' Compacts and thus, entitled to certification of the Arbitration Award. The State has not disputed any of the facts outlined by the Nations in their Motion for Summary Judgment, as amended, and it has not asserted any affirmative defenses or arguments that would preclude certification in this case. The State has stated in its response that if Part 12 of the parties' Compacts, which authorizes the submission of disputes over the terms and conditions of the Compacts to arbitration, is valid, then the Arbitration Award should be deemed valid and certified. The Court agrees.

■ Based upon the record, the Court finds that there are no genuine issues of material fact that preclude summary judgment in the Nations' favor and that the dispute resolution clauses of the parties' Compacts are valid, thereby making arbitration the proper forum to interpret the phrase "court of competent jurisdiction." Accordingly, the Nations are entitled to judgment as a matter of law to the extent

---

7. Vice Chief Justice Taylor and Justices Opala, Watt, Winchester and Colbert concurred. Justice Kauger in a separate writing concurred in part and dissented in part. Justice Hargrave dissented, and Justice Reif, by separate writing, in which Chief Justice Edmondson joined, likewise dissented.

8. Chief Justice Edmondson, Vice Chief Justice Taylor and Justices Opala, Watt, Winchester and Colbert concurred. Justices Hargrave, Kauger and Reif dissented.

that the Court hereby certifies the Arbitration Award dated August 25, 2009.

■ The Nations have also contended that they are entitled to permanent injunctive relief to prevent further harm by the State in its continued violation of the terms of the Arbitration Award, Proof of each of four equitable factors is required before a permanent injunction may issue. A party must establish " '(1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest.' " *Prairie Band Potawatomi Nation v. Wagnon,* 476 F.3d 818, 822 (10th Cir.2007)(quoting *Fisher v. Oklahoma Health Care Authority,* 335 F.3d 1175, 1180 (10th Cir.2003)).

■ Because there is no dispute among the parties that certification of the Arbitration Award is warranted, the Court finds that the Nations have shown actual success on the merits. The Court likewise finds that the remedies available at law, including monetary damages, are inadequate and that the Nations will suffer irreparable harm if the injunction does not issue. The Court further finds that the balance of equities favors the Nations and that granting an injunction as requested by the Nations will not adversely affect the public interest, since tribal forums exist for the resolution of Compact-based, Indian country tort lawsuits against the Nations. Because the factors weigh in favor of permanent injunctive relief, the Court finds that the Nations are entitled to the relief they have requested.

Accordingly, the Court

(1) GRANTS the Nations' Motion for Summary Judgment [Doc. 10] filed on April 16, 2010, and amended on April 21, 2010, *see* Doc. 14;

(2) in so doing, CERTIFIES the Arbitration Award dated August 25, 2009, *In the Matter of the Joint Referral to Binding Arbitration by the Choctaw Nation of Oklahoma, the Chickasaw Nation, and the State of Oklahoma of Disputes Under and/or Arising From the Choctaw Nation of Oklahoma and State of Oklahoma Gaming Compact and the Chickasaw Nation and State of Oklahoma Gaming Compact;*

(3) FINDS that an permanent injunction shall be entered in this matter and that the State of Oklahoma is hereby ORDERED to comply with the terms of the Arbitration Award, but may petition the Court to modify or vacate the permanent injunction if applicable federal law relating to the jurisdiction of federal and state courts as it pertains to the issues in this action changes;

(4) RETAINS jurisdiction in this matter for the purpose of enforcing the terms of this Order as to all parties; and

(5) DIRECTS the parties to confer and submit within (7) days a judgment that conforms not only with Rule 58, F.R.Civ. P., but also with the requirements of Rule 65(d), F.R.Civ.P.